IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CAROLD BATTLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cv-403-WC |
| | ) | |
| CORIZON, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

On June 8, 2015, Carold Battle ("Plaintiff") filed a complaint (Doc. 1) alleging that Corizon, LLC[1] ("Defendant") violated provisions of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2611, *et seq.*  Plaintiff alleged both an interference claim and a retaliation claim under the FMLA.  Doc. 1.  Before the court is Defendant's Motion for Summary Judgment (Doc. 29) and its Brief in Support (Doc. 29-1); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 34); and Defendant's Reply (Doc. 41).  For the reasons that follow, the court finds that Defendant's motion is due to be GRANTED.

---

[1] Originally, Plaintiff's complaint was against "Corizon Health Systems, Inc."  Doc. 1 at 1.  Plaintiff's First Amended Complaint (Doc. 6) named Corizon Health, Inc., and Corizon LLC, as defendants.  Doc. 6 at 1. As a "Supplemental Answer to Plaintiff's First Amended Complaint," Defendant informed the court that the correct legal entity for Plaintiff's suit was Corizon, LLC, and that Corizon Health, Inc., should be dismissed.  Doc. 8 at 1.  Defendant stated that Plaintiff's counsel agreed to the dismissal of Corizon Health, Inc., and agreed to proceed against Corizon, LLC.  *Id.*

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[2]  Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248).

Under Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

---

[2] On December 1, 2010, amendments to Rule 56 became effective.  The amendments to Rule 56 generally reorganize the provisions of the Rule and incorporate language which is "intended to improve the procedures for presenting and deciding summary judgment-motions and [is] . . . *not intended to change the summary-judgment standard or burdens.*" *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011) (internal quotations omitted) (emphasis in original).  Moreover, because the summary judgment standard remains the same, the amendments "will not affect continuing development of the decisional law construing and applying" the standard now articulated in Rule 56(a).  Fed. R. Civ. P. 56(a) advisory committee's note to 2010 amendments.  Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the non-moving party must "go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  In doing so, and to avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

If the nonmovant "fails to properly address another party's assertion of fact" as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials –

including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2) & (3).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor.  *Anderson*, 477 U.S. at 255.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).  Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

A reviewing court is restrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial.  *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 54 (11th Cir. 2012) (citations and quotations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment

if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

## III.   STATEMENT OF FACTS

Pursuant to the court's scheduling order, the parties have jointly agreed that the following facts are uncontested for purposes of Defendant's motion for summary judgment:

Defendant has a contract with the Alabama Department of Correction ("ADOC") to provide health care related services to inmates incarcerated within Alabama state correctional facilities.  Defendant has held the contract with the ADOC since November 1, 2007.  As part of that contract, Defendant has certain obligations that are monitored by the ADOC, and Defendant is regularly audited by the ADOC to ensure compliance under the contract.

Plaintiff worked as a dental assistant for Defendant at the Bullock Correctional Facility from 1998 to August 2014.  In September 2013, Plaintiff developed knee problems. Due to her knee issues, Plaintiff initially sought and was approved for FMLA leave beginning on December 10, 2013, expiring January 10, 2014, with Plaintiff returning to work at the Bullock Correctional Facility on January 13, 2014.  Plaintiff thereafter sought further FMLA leave and was provided with FMLA leave beginning on May 21, 2014, and extending through July 11, 2014.  On July 11, 2014, Plaintiff's protected twelve weeks of FMLA leave expired. However, Plaintiff's FMLA leave, at Plaintiff's request, was extended from May 21, 2014, through August 2, 2014.  Plaintiff was never denied FMLA leave.

Plaintiff returned to work at the Bullock Correctional Facility on Monday, August 4, 2014.  On August 5, 2014, personnel from the ADOC's offices of health services met with Defendant's management personnel and informed them that there were issues with respect to the logs of dental tools and instruments at the Bullock Correctional Facility that needed to be addressed immediately.  At that meeting, the ADOC officials informed Defendant of certain issues with the dental instrument count logs that the ADOC had discovered during its audit.

Stephanie Caldwell ("Caldwell"), Paulette Perryman ("Perryman"), and Dr. Wehby ("Wehby") were not on FMLA leave during June, July, and August of 2014.  Prior to Plaintiff's termination, none of those individuals were questioned or interviewed about the issues with the dental logs.[3]  None of those individuals were terminated for falsifying or failing to inform Defendant that the logs were inaccurate.  On August 6, 2014, Defendant's personnel terminated Plaintiff, after recommendation for termination from Jessica Duffell ("Duffell"), for allegedly falsifying the Daily Dental Instrument Count Logs. During the meeting in which Plaintiff was terminated, Plaintiff was informed that she was being terminated because she had falsified documents, which she disputed.

Apart from the above uncontested facts, the court has carefully considered the pleadings in this case and all documents submitted in support of, and in opposition to, Defendant's Motion for Summary Judgment.  The submissions of the parties, viewed in

---

[3] Caldwell was questioned about the logs on March 9, 2016, one day after Duffell's deposition, via a conference call with Defendant's attorney, Cindy Johnson, and Duffell.

the light most favorable to Plaintiff, the non-moving party, establish the following relevant facts:

Plaintiff's statutorily-protected FMLA leave ended on July 11, 2014.  She was granted an extension until August 2, 2014.  Plaintiff requested a second extension on July 30, 2014, but was denied.  On that same day, one week prior to Plaintiff's termination, Defendant discussed, via email, terminating Plaintiff if she was unable to return to work. In that email, Defendant's employee, Cindy Johnson ("Johnson"), stated that she could "no longer accommodate [Plaintiff's] position being open."  Plaintiff returned to work on Monday, August 4, 2014.

Defendant and the ADOC have policies which require the Dentistry Department to record the use of the dental instruments utilized by the dentist. Even when the dental assistant is not at the facility, it remains Defendant's responsibility to protect inmates from getting dental sharps that could hurt someone.  Thus, the dentist, or anyone else working in the Dentistry Department on any particular day, should complete the daily instrument log if procedures are performed using particular dental tools.  As such, the daily responsibility for the logs was not imparted to Plaintiff alone.  During June and July 2014, while Plaintiff was on leave, Caldwell, Perryman, and Wehby were the only individuals working in the Dentistry Department.

Prior to August 2014, the ADOC performed an audit of the dental unit at the Bullock County Correctional Facility, which uncovered problems with the Daily Dental Instrument Count logs for June 2014, July 2014, and August 2014.  The ADOC communicated the discrepancies to Defendant on August 5, 2014.  Defendant's employees, Duffell and

Colleen Oakes ("Oakes") looked at the logs, and sometime thereafter, Duffell recommended that Plaintiff be terminated.  No investigation was performed other than that.

Plaintiff was asked to report to Oakes's office on August 6, 2014.  When she did, Duffell, Oakes, and Johnson were present.  Plaintiff was shown the logs and was asked if her initials appeared on the logs.  Plaintiff admitted that her initials appeared on the logs, but stated that she did not falsify the logs.  Plaintiff was immediately terminated for "falsification of an institution record/documents and failure to perform shift to shift counts," and Duffell assisted her in gathering her things and exiting the building.

After Plaintiff's termination, Wehby stated that he copied the logs from a previous month and simply changed the date at the top of the page because he did not know how to complete the logs in Plaintiff's absence.[4]  Wehby stated that he did so per the instruction of Johnson, who as early as June 2014, knew an audit was forthcoming.  Johnson was not part of any investigation of Plaintiff and was only present during Plaintiff's termination.  As of August 6, 2014, all of the "Daily Dental Instrument Count" logs from August 2013 through January 2015[5] with the exception of June, July, and August 2014 are missing.

After her return to work on August 4, 2014, Plaintiff did not see patients with Dr. Wehby on August 5, 2014, or August 6, 2014.  Thus, Plaintiff did not use or look at the Daily Dental Instrument Count during her three days back from leave.

---

[4] Testimony from Duffell supports Wehby's statement that the June 2014, July 2014, and August 2014 logs were copied from a previous month.  *See* Duffell Depo. (Doc. 34-8) at 61:6-67:15.

[5] Plaintiff's statement of contested facts erroneously states that the logs are missing through January 2014.  However, Duffell's testimony indicates that the logs were missing from August 2013 through December 2014.  Duffell Depo (Doc. 34-8) at 38:13-39:20; 50:15-16.

## IV.    DISCUSSION

Among the substantive rights granted by the FMLA to eligible employees are: (1) the right to take up to twelve work weeks of leave during any twelve-month period because of a serious health condition that makes the employee unable to perform the functions of her position, 29 U.S.C. § 2612(a)(1); and (2) the right following leave to be restored to the position of employment held when the leave commenced, or to an equivalent position, 29 U.S.C. § 2614(a)(1). "To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights under the Act . . . and retaliation claims, in which an employee asserts that [her] employer discriminated against [her] because she engaged in activity protected by the Act." *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001); *see also* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave.").

Defendant seeks summary judgment on both Plaintiff's interference claim and Plaintiff's retaliation claim under the FMLA.  To resolve Defendant's motion, the court begins its analysis with a discussion of the elements of each of Plaintiff's claims.

### A.    FMLA Interference Claim

To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that she was entitled to a benefit under the

FMLA, and she was denied that benefit.[6] *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1353–54 (11th Cir. 2000); *King v. Preferred Tech. Grp.,* 166 F.3d 887, 891 (7th Cir. 1999).

Plaintiff alleges that Defendant violated 29 U.S.C. § 2614 "by interfering with Plaintiff's rights under the FMLA to get healthy and by terminating her for using her FMLA leave." Doc. 11 at 4. Plaintiff also asserts that Defendant "has interfered with Plaintiff's right to take FMLA [l]eave," "restrained her right to take FMLA [l]eave," and that "Defendant's actions were causally and directly connected to Plaintiff's protected activity." Doc. 11 at 4. Further, Plaintiff alleges that "Defendant has interfered with Plaintiff's position" by failing to restore her to her position upon return from FMLA leave. Doc. 11 at 5.

### B.     FMLA Retaliation Claim

To succeed on a retaliation claim under the FMLA, an employee must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right. *Strickland,* 239 F.3d at 1207 (quoting *King,* 166 F.3d at 891). In other words, an employee bringing a retaliation claim

---

[6] As an initial matter, to assert both an interference and a retaliation claim under the FMLA, an employee must show that: (1) she is an eligible employee under the FMLA, 29 U.S.C. § 2611(2); (2) the employer is subject to the requirements of the FMLA, 29 U.S.C. § 2611(4); (3) she was entitled to leave under the FMLA, *see Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012) ("In order to receive FMLA protections, one must be . . . entitled to leave, meaning an employee has experienced a triggering event."); and (4) she gave sufficient notice to the employer of her intention to take FMLA leave, 29 U.S.C. § 2612(e). Here, at the time of Plaintiff's termination, Plaintiff had been employed by Defendant for approximately seven years. Compl. (Doc. 11) at 4. Plaintiff states that she had a serious health condition pursuant to 29 U.S.C. § 2611; that she requested FMLA leave in compliance with 29 U.S.C. § 2612; and that Defendant is an employer subject to FMLA in accordance with 29 U.S.C. § 2611. Doc. 11 at 4.

faces the increased burden of showing that her employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." *Id.*

When an employee asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the court will apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, (1973), for evaluating Title VII discrimination claims. *See Brungart v. BellSouth Telecomms. Inc.,* 231 F.3d 791, 798 (11th Cir. 2000). First, the employee must establish a *prima facie* case of FMLA retaliation by showing that: (1) she engaged in a statutorily-protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Parris v. Miami Herald Publ'g Co.,* 216 F.3d 1298, 1301 (11th Cir. 2000). The burden then shifts to the employer "to articulate a legitimate reason for the adverse action." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). The employer's burden is one of production, not of persuasion. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000). "If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1268 (11th Cir. 2008) (internal quotation marks omitted). The employee must "meet [each proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of [the employer's] reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala*.,

446 F.3d 1160, 1163 (11th Cir. 2006) (internal citations omitted).  The employee must

demonstrate

> that the [employer's] proffered reason was not the true reason for the
> employment decision . . . [The employee] may succeed in this either directly
> by persuading the court that a discriminatory reason more likely motivated
> the employer or indirectly by showing that the employer's proffered
> explanation is unworthy of credence . . . [The employee] could do this by
> pointing to weaknesses, implausibilities, inconsistencies, incoherencies, or
> contradictions in the proffered explanation.

*Brooks*, 446 F.3d at 1162-63 (internal citations omitted).  Importantly, "[a] reason

is not pretext for discrimination unless it is shown both that the reason was false,

and that discrimination was the real reason."  *Id.* at 1163.  To do so, "[t]he employee

may rely on evidence that [s]he already produced to establish [her] *prima facie*

case."  *Id*.

Plaintiff alleges that "Defendant has wilfully [sic], intentionally, and with malice or

reckless indifference, retaliated against Plaintiff on the basis of Plaintiff's FMLA needs.

Defendant wilfully [sic] interfered with her FMLA rights, and terminated Plaintiff because

she invoked and used her FMLA leave.  Defendant had no legitimate reason to terminate

Plaintiffs' [sic] employment."  Doc. 11 at 3.  Further, Plaintiff alleges that Defendant has

"retaliated against Plaintiff by terminating her employment because she took FMLA

[l]eave and because of her potential to request for continued leave under the FMLA."  Doc.

11 at 5.

### C.     Application

Against the above backdrop of the elements of each claim which Plaintiff is required to prove in order to sustain her claims, the court turns to consider Defendant's motion for summary judgment.

### 1.     Plaintiff's FMLA Interference Claim

Defendant asserts that it is entitled to summary judgment on Plaintiff's FMLA interference claim because the claim fails as a matter of law.  Def.'s Br. (Doc. 29-1) at 13. The crux of Defendant's argument is simple: Plaintiff was not entitled to any benefit under the FMLA because Plaintiff had already exhausted her twelve weeks of statutorily-protected leave.  Def.'s Reply (Doc. 41) at 2 ("no FMLA interference claim lies where [an employee] is afforded all of the FMLA they are entitled to receive").  As such, Plaintiff was not entitled to additional FMLA leave, nor was she entitled to reinstatement to her previous position upon her return from a fifteen-week leave.  Doc. 29-1 at 10-13.

In support of its position, Defendant cites three authorities, including *Freeman v. Koch Foods of Alabama*, 777 F. Supp. 2d 1264, 1289 (M.D. Ala. 2011).  *See also May v. AT&T Corp.*, No. 2:11-cv-01923-TMP, 2013 WL 3357005, at *11 (N.D. Ala. Mar. 8, 2013) (noting that the employer did not interfere with the rights of the employee under the FMLA because, in part, the employee used more than her twelve weeks of FMLA leave); *Cazeau v. Wells Fargo Bank, N.A.,* 614 F. App'x 972, 978 n.2 (11th Cir. 2015) ("Although Cazeau did not allege a claim of interference with his rights under the Family and Medical Leave Act, 29 U.S.C. § 2615(a), we note that the evidence indicates that Cazeau's position was filled after he had exhausted his FMLA leave and corresponding job-protection rights.").

In *Freeman*, the employee asserted an FMLA interference claim based upon her

employer's failure to reinstate her to her previous position upon her return from leave.

*Freeman,* 777 F. Supp. 2d at 1288-89.   In granting summary judgment in favor of the

employer, this court noted:

> Here, Koch Foods points out that it granted Freeman 24 weeks of leave,
> essentially doubling the twelve weeks of FMLA leave to which she was
> entitled. . . . Indeed, the undisputed facts demonstrate that Freeman began
> her FMLA leave in August of 2006 and did not return until February of 2007.
> As a matter of law, Koch Foods could not have interfered with Freeman's
> substantive right to be reinstated because she had no such right.   Thus,
> summary judgment is due to be GRANTED with respect to Freeman's failure
> to reinstate claim.

*Id*. at 1289.  Thus, because the *Freeman* employee had exceeded her maximum, statutorily-

protected leave under the FMLA, she could not state a claim for interference as a matter of

law. *Id*.

In response to Defendant's argument, Plaintiff states that her "FMLA leave was

approved and she was due to have her position restored by [Defendant], but was terminated.

[Plaintiff] had a substantive right to take this leave and was terminated.   This is sufficient

to state an interference claim."[7]  Pl.'s Resp. (Doc. 34) at 12.  For support, Plaintiff points

to *Strickland,* 239 F.3d at 1206-07 (holding that the employee had sufficiently alleged an

interference claim to withstand summary judgment because the employee demonstrated

that he was entitled to a right under the FMLA, and denied that right); *Martin v. Brevard*

---

[7] In Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Plaintiff focuses solely on her
right to reinstatement as the basis of her interference claim.   Therefore, the court will address only
interference based upon failure to restore and not interference based on failure to grant leave.   However,
for the reasons set forth above, both types of interference claims would fail as a matter of law because, after
Plaintiff exhausted her twelve weeks of statutorily-protected leave, she was no longer entitled to any benefit
under the FMLA.

*County Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008) (holding that a genuine issue of material fact remained as to whether an employee would have retained his position had he not taken FMLA leave); and *Turner v. Florida Prepaid Coll. Bd.*, 522 F. App'x 829, 834-35 (11th Cir. 2013) (holding that genuine issues of fact existed about whether the employer failed to restore the employee to her prior position, or instead would have fired her even had she not taken leave). Plaintiff presents evidence that "she returned to work as approved on August 4, 2014, and attempted to start her job again, but was terminated in less than 72 hours." Doc. 34 at 12. Additionally, Plaintiff states that she "dispute[s] the legitimacy of Defendant's proffered reasons associated with her termination." Doc. 34 at 12. Thus, Plaintiff asserts that "Defendant interfered with her right to return to her position[;] therefore[,] Plaintiff has established a genuine issue of material fact that [Defendant's] failure to restore constitutes an interference claim, which should be presented to a jury." Doc. 34 at 12. The court disagrees.

The undisputed evidence indicates that Plaintiff sought and was approved FMLA leave from December 10, 2013, through January 10, 2014. Def.'s Br. (Doc. 29-1) at 2, ¶4 ("Ms. Battle initially sought and was approved for FMLA leave beginning on December 10, 2013, expiring January 10, 2014."); Pl.'s Br. (Doc. 34) at 2, ¶4 (same). Plaintiff then requested and was approved additional FMLA leave from May 21, 2014, through July 11, 2014. Doc. 29-1 at 2, ¶5 ("Ms. Battle thereafter sought further FMLA leave and was provided with FMLA leave beginning on May 21, 2014 and extending through July 11, 2014."); Doc. 34 at 3, ¶5 (same). The parties agree that Plaintiff's twelve weeks of statutorily-protected FMLA leave expired on July 11, 2014. Def.'s Br. (Doc. 29-1) at 2,

¶6 ("On July 11, 2014, Ms. Battle's protected 12 weeks [of] FMLA leave expired."); Pl.'s Br. (Doc. 34) at 3, ¶6 (same).

The court concludes that Plaintiff's interference claim fails because the right to reinstatement terminates once twelve weeks of FMLA leave expire.  *Freeman*, 777 F. Supp. 2d at 1289; *see also Ragsdale v. Wolverine World Wide, Inc*., 535 U.S. 81, 96 (2002) (the FMLA provides for only twelve weeks of leave and does not suggest that the twelve weeks of leave may be extended); *Brungart,* 231 F.3d at 797 (same); *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1308 (11th Cir. 1999) (employee absent for more than the protected period of time does not have a right to reinstatement even if the employer provides more leave than required by the FMLA); *Cox v. Autozone, Inc*., 990 F. Supp. 1369, 1377-79 (M.D. Ala. 1998) ("Under the FMLA, an eligible employee receives twelve weeks of unpaid leave in any twelve month period for certain family and medical purposes. . . . An employer has no responsibility to restore a person's job after that twelve week period. . . . The court finds a clear intent of Congress to protect only those workers who take 12 or fewer weeks of leave.").  Various other courts are in accord.  *See, e.g., Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 148 (3d Cir. 2004) (an employee is subject to discharge on the first day he is both absent from work and no longer protected by the FMLA); *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 161–62 (2d Cir. 1999) (no interference claim when the employee was unable to perform his job for two months after expiration of his twelve–week FMLA period); *Ackerman v. Beth Israel Cemetery Ass'n,* Civ. Act. No. 09-1097 (GEB), 2010 WL 2651299 at * 7-8 (D.N.J. June 25, 2010) (once an employee has been provided with twelve weeks of leave, the employer's obligations under the FMLA

expire); *Eklind v. Cargill Inc.,* No. 3:07-cv-89, 2009 WL 2516168 at *5-6 (D.N.D. Aug. 14, 2009) (extension of leave time beyond that required by the FMLA does not extend the right to restoration of job); *Talkin v. Deluxe Corp.,* Civ. Act. No. 05-2305-CM, 2007 WL 1469648 at *4–5 (D. Kan. May 18, 2007) (an employee who returns after exhausting FMLA leave cannot state an entitlement claim under the FMLA); *Standifer v. Sonic–Williams Motors,* 401 F. Supp. 2d 1205, 1221–22 (N.D. Ala. 2005) (an employee was not entitled to reinstatement because she took thirteen weeks, not twelve weeks, off work); *Dogmanits v. Capital Blue Cross,* 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005) (employees who exceed twelve weeks leave stand to lose the right to job restoration under FMLA even if employers provided additional non-FMLA leave); *Farina v. Compuware Corp.,* 256 F. Supp. 2d 1033, 1054 (D. Ariz. 2003) (an employee who took longer than a twelve–week leave was not entitled to reinstatement unless she was prepared to return within the period of FMLA leave allowed); *Smith v. Blue Dot Servs. Co.,* 283 F. Supp. 2d 1200, 1205–06 (D. Kan. 2003) (an employee who was unable to return to work before his FMLA leave expired did not allege any denial of an FMLA right); *Hanson v. Sports Auth.,* 256 F. Supp. 2d 927, 936 (W.D. Wis. 2003) (an employee may be terminated if she does not have the required medical certification at the time the FMLA leave concludes); *Holmes v. e.spire Comms.,* 135 F. Supp. 2d 657, 666–67 (D. Md. 2001) (there is no FMLA remedy for job restoration after the expiration of FMLA leave in spite of an employer's policy granting additional leave); *Hite v. Biomet, Inc.,* 53 F. Supp. 2d 1013, 1017–18 (N.D. Ind. 1999) (while an employer may grant an employee more than twelve weeks leave, the additional time is not protected leave subject to the FMLA safeguards); *but see Santosuosso v.*

17

*NovaCare Rehabilitation,* 462 F. Supp. 2d 590, 597–98 (D.N.J. 2006) (employee did not lose FMLA protection by taking a leave longer than twelve weeks where her employer gave her permission to do so);[8] *Barone v. Leukemia Soc. of Am.,* 42 F. Supp. 2d 452, 463-64 (D.N.J. 1986) (applying the doctrine of equitable estoppel to protect an employee's rights under the FMLA when the employer never informed the employee that she was required to return to work in the event her spouse died).[9]

Accordingly, the court finds that, because Plaintiff cannot establish an interference claim under the FMLA as a matter of law, summary judgment is appropriate. [10]

### 2.       Plaintiff's FMLA Retaliation Claim

Defendant asserts that it is entitled to summary judgment on Plaintiff's FMLA retaliation claim because it "has articulated a legitimate, non-discriminatory reason for Plaintiff's termination," and that Plaintiff cannot show that the reason was pretext for retaliation.  Doc. 29-1 at 15.

---

[8] The decision in *Santosuosso*, which is non-binding upon this court, was based upon reasoning that the employer had knowledge of the employee's intention to take longer than twelve-weeks leave, which was allowed under the employee benefit program.  462 F. Supp. 2d at 597-98.  Thus, that court reasoned that because Congress encourages employers to provide more benefits than mandated by the law, the employee should not lose FMLA protection for taking more than twelve weeks when her employer gave her permission to do so.  *Id*. at 598.

[9] The decision in *Barone* applied the doctrine of equitable estoppel as an alternative route to protect the employee's rights under the FMLA.  42 F. Supp. 2d at 463-64.  Here, Plaintiff has not pointed to any facts or evidence that Defendant represented to her that she was still protected under the FMLA after July 11, 2014.  Therefore, this case is distinguishable from *Barone*, which is non-binding upon this court.

[10] Each of the cases cited by Plaintiff are distinguishable.  In *Strickland* and in *Turner*, the employees had not exhausted twelve weeks of statutorily-protected FMLA leave when they were terminated.  In *Martin*, the employee was terminated because he did not fulfill his improvement plan, but because the employee was unable to complete the plan as a result of being on FMLA leave, the Eleventh Circuit concluded that a genuine issue of material fact remained concerning whether the employer interfered with the employee's right to reinstatement.

The court begins by examining whether Plaintiff has made out a *prima facie* case for retaliation under the FMLA.  As set forth above, Plaintiff must show that: (1) she engaged in a statutorily-protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity.  *Parris,* 216 F.3d at 1301.

The undisputed evidence shows that Plaintiff engaged in statutorily-protected activity when she took FMLA leave from December 10, 2013, through January 10, 2014, and then again from May 21, 2014, through July 11, 2014.[11]  *See* Doc. 29-1 at 2, ¶¶ 4-7; Doc. 34 at 2-3, ¶¶ 4-7.  Next, the undisputed evidence shows that Plaintiff was terminated on August 6, 2014, for allegedly falsifying instrument logs.  *See* Doc. 29-1 at 4, ¶ 20; Doc. 34 at 5, ¶ 20.  Termination is an adverse employment decision.  *See Norman v. S. Guar. Ins. Co.,* 191 F. Supp. 2d 1321, 1332 (M.D. Ala. 2002) (noting that the employee's termination is "certainly enough to satisfy her burden of showing an adverse employment decision").  Finally, the court concludes that Plaintiff's termination was causally related to her FMLA leave.  "To establish the causal connection element, 'a plaintiff need only show "that the protected activity and the adverse action were not wholly unrelated."'"  *Brungart*, 231 F.3d at 800 (quoting *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1354 (11th Cir. 1999)); *see also Simmons v. Camden Cnty. Bd. of Educ.,* 757 F.2d 1187, 1189 (11th Cir. 1985)).  The undisputed evidence shows that Plaintiff returned from FMLA leave on

---

[11] While Plaintiff took additional leave from July 12, 2014, through August 2, 2014, both parties agree that the leave was no longer statutorily protected after the culmination of twelve weeks, which occurred on July 11, 2014.  Doc. 29-1 at 2, ¶ 6; Doc. 34 at 3, ¶ 6.

August 4, 2014, and was terminated on August 6, 2014.  *See* Doc. 29-1 at 2, 4, ¶¶ 8, 20; Doc. 34 at 3, 5, ¶¶ 8, 20.  The temporal proximity of Plaintiff's return to work and her termination is enough to establish a causal connection for a *prima facie* case of FMLA retaliation.  *See Smith v. Constr. Datafax, Inc*., 871 F. Supp. 2d 1226, 1239 (N.D. Ala. 2012) ("Under the Eleventh Circuit case law, three days is clearly sufficient temporal proximity to establish causal connection for the prima facie case.")  In addition, a causal connection may be established by showing that a decision-maker was aware of the protected conduct at the time of the adverse employment action.  "In order to show the two things were not entirely unrelated, the [employee] must generally show that the decision[-]maker was aware of the protected conduct at the time of the adverse employment action." *Brungart,* 231 F.3d at 800 (citing *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993)); *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997) ("[I]n a case involving a corporate defendant the [employee] must show that the corporate agent who took the adverse action was aware of the [employee's] protected expression. . . ."). Plaintiff has presented evidence that Duffell made the decision to terminate Plaintiff and that Duffell knew at the time of Plaintiff's termination that Plaintiff had recently returned from FMLA leave.  *See* Duffell Depo. (Doc. 34-8) at 96:7-12.  Therefore, because Defendant's decision-maker knew that Plaintiff had recently returned from FMLA leave at the time of Plaintiff's termination, the court concludes that Plaintiff has satisfied her burden of showing that the protected activity and the adverse action were not wholly unrelated. As such, Plaintiff has established a *prima facie* case of retaliation under the FMLA.

Next, the court turns to whether Defendant has articulated a legitimate, non-retaliatory reason for terminating Plaintiff's employment.  *See Hurlbert*, 439 F.3d at 1297 (noting that after an employee establishes a *prima facie* case of retaliation under the FMLA, the burden shifts to the employer to articulate a legitimate reason for the adverse action). Defendant proffers two reasons for terminating Plaintiff: (1) Plaintiff "forged and altered medical charts"; and/or (2) Plaintiff "did not discharge her duties in preparing and maintaining those charts as she was required to do."  Doc. 29-1 at 15.  Falsifying documents and failure to discharge work-related duties are both legitimate, non-retaliatory reasons to terminate an employee.  *See, e.g., Thomas v. Dolgencorp, LLC*, Civ. Act. No. 1:13cv128-MHT, 2015 WL 4528232 at *6 (M.D. Ala. July 27, 2015).

Because Defendant has offered a legitimate, non-discriminatory reason for terminating Plaintiff, Plaintiff must now offer sufficient evidence to create a genuine issue of material fact that Defendant's reason is not true, but is instead pretext for discrimination.[12]  *See Hulbert*, 439 F.3d at 1297 (noting that once an employer presents a legitimate, non-discriminatory reason for terminating an employee, the employee "must show that the [employer's] proffered reason for the adverse action is pretextual").  Prior to delving into Plaintiff's evidence of pretext, the court initially notes that the facts of this case do not inherently establish a retaliatory motive on the part of Defendant.  In particular,

---

[12] While the temporal proximity of Plaintiff's termination and her return from FMLA leave is evidence of pretext, it is insufficient, standing alone, to establish pretext. *See Spann v. DynCorp Tech. Servs., LLC*, No. 05-16716, 2006 WL 1667294 at *3 (11th Cir. June 16, 2006) (noting that temporal proximity . . . alone is not sufficient to establish pretext); *Gamba v. City of Sunrise*, 157 F. App'x 112, 113 (11th Cir. 2005) (determining that temporal proximity is not enough to establish pretext "[w]here the employer produces significant evidence of the employee's poor performance" or other legitimate reason for the employment decision).

the court would note that a third-party – the ADOC – set the wheels in motion for Plaintiff's termination, not Defendant.  Indeed, the undisputed facts show that the ADOC alerted Defendant that there were problems with the dental logs on August 5, 2014.  Doc. 29-1 at 3, ¶ 11 ("On August 5, 2014, personnel from the ADOC's offices of health services met with Corizon management personnel and informed them that there were issues with respect to the logs of dental tools and instruments at the Bullock Correctional Facility that needed to be addressed immediately.");  Doc. 34 at 3, ¶ 11 (same).  Thereafter, Defendant initiated action against Plaintiff.  Doc. 29-1 at 4, ¶ 20 ("On August 6, 2014, Corizon personnel terminated Battle . . . for allegedly falsifying the Daily Dental Instrument Count logs. . . .");  Doc. 34 at 5, ¶ 20 (same).  There is no evidence that Defendant was aware that the logs were incorrect prior to that time.  Furthermore, there is no evidence that Plaintiff had any pending requests for FMLA leave, or any evidence that Plaintiff would be requesting additional FMLA leave. As such, the facts do not inherently support the proposition that Defendant retaliated against Plaintiff with regards to leave that she had taken, or leave that she was seeking. [13]

---

[13] Plaintiff suggests in her complaint that Defendant retaliated against her "because of her potential request for continued leave under the FMLA."  Doc. 11 at 5, ¶ 24.  She also states that Defendant was "aware that the Plaintiff's right knee was still in bad condition and would also need a total knee replacement in the future, which would call for more FMLA leave."  Doc. 11 at 3, ¶ 16.  However, in her opposition to summary judgment, Plaintiff does not point to evidence that she would be requesting additional FMLA leave, or that Defendant suspected that Plaintiff might be requesting additional FMLA leave (at least after Defendant's denial of Plaintiff's second FMLA extension request).  The only other evidence presented by Plaintiff indicating a retaliatory motive from Defendant is an email stating that Plaintiff would be terminated if she did not return from FMLA leave (after her first extension) because Plaintiff's position could no longer be held open.  *See* Doc. 34 at 5, ¶ 1; Doc. 34-9 at 2.  That email was sent July 30, 3014, during Plaintiff's first extension of her FMLA leave.  It appears to be in response to knowledge that Plaintiff was not returning to work on August 4, 2014, after the expiration of her first extension (although she did, in fact, return).  The court can infer from the email, in the light most favorable to Plaintiff, that Plaintiff's absence was causing

Plaintiff presents the following arguments to establish pretext: (1) Defendant failed to follow its own internal policies with regards to investigating workplace incidents requiring corrective action; (2) Defendant treated comparators to Plaintiff more favorably than Plaintiff; and (3) Plaintiff did not falsify instrument logs; instead another employee of Defendant instructed the logs to be created while Plaintiff was on leave.  Doc. 23 at 15-22. The court will examine each, in turn.

*(1) Failure to Follow Internal Policies*

First, Plaintiff points to Defendant's "failure to follow its policies" as evidence of pretext.  Doc. 34 at 17-18; *see also McCann v. Mobile Cnty. Pers. Bd.*, Civ. Act. No. 05-0364-WS-B, 2006 WL 1867486, at *14 (S.D. Ala. July 6, 2006) (finding evidence of pretext when the employer failed to follow the "regular practice" for selecting among candidates to promote); *Bass v. Bd. of Cnty. Comm'rs Orange Cnty., Fla.*, 256 F.3d 1095, 1108 (11th Cir. 2001) (noting that violating written procedures and departing from "standard procedure" was evidence of pretext in Title VII race discrimination case); *Rulin v. Lincoln Land Comm. Coll.,* 420 F.3d 712, 727 (7th Cir. 2005) ("An employer's failure to follow its own internal procedures can constitute evidence of pretext.")  For support, Plaintiff cites Defendant's Employee Success Guide ("ESG"), which addresses "Corrective Action" as follows: "[Defendant] believes that managers and employers have a mutual responsibility to correct performance or conduct detrimental to the efficient delivery of

---

difficulties in the day-to-day operations of the Dentistry Department.  The court will consider these facts as evidence of a retaliatory motive as it analyzes Plaintiff's arguments for pretext.

services.  Prior to imposing corrective action, Managers should investigate the issue and gather statements from everyone involved in the situation, as appropriate."  Def.'s ESG (Doc. 34-14) at 16.  Plaintiff states that Defendant "failed to gather statements from anyone, even with knowledge that the ADOC discovered the fraudulent forms during Plaintiff's protected leave."  Doc. 34 at 17 (pointing to Duffell Depo. (Doc. 34-8) at 70:11-71:16; Naglich Aff. (Doc. 34-5) at ¶¶ 5, 7).  Plaintiff asserts that Defendant should have been aware that someone had been using the fraudulent logs for months, but no one was questioned.  Doc. 34 at 17.  Plaintiff also points to statements by Duffell stating that "[she] should have completed the investigation" prior to terminating Plaintiff.  Doc. 34 at 17; Doc. 34-8 at 98:9-16.  Thus, Plaintiff alleges pretext, asserting that Defendant, by failing to question or gather statements from anyone, "intentionally ignore[d] its own policy regarding investigations and procedures, prior to handing down corrective action."  Doc. 34 at 18.

Defendant replies that the same portion of the ESG on which Plaintiff relies provides "managers with discretion as to how they investigate instances of misconduct prior to imposing corrective action."  Doc. 41 at 5.  Specifically, Defendant emphasizes the ESG's language, stating: "Prior to imposing corrective action, Managers should investigate the issue and gather statements from everyone involved in the situation, *as appropriate*."  Doc. 41 at 5 (emphasis in original); Doc. 34-14 at 16 (emphasis added).  Thus, Defendant asserts that its internal policies did not require it to gather statements, and as such, it could not have failed to follow its policies.  Doc. 41 at 5.  Further, Defendant notes the ESG's language for discretionary, progressive corrective action: "[Defendant] reserves the

24

prerogative to take progressive corrective action, up to and including immediate termination, and to skip any intermediate steps in the corrective action process, where appropriate." Doc. 41 at 5; Doc. 34-14 at 16. Defendant argues that even if it did fail to comply with its own investigatory procedures, that would not establish pretext because Plaintiff "did not show that the investigation was conducted differently than other investigations or that the technical deviations . . . were due to a retaliatory motive. . . .[T]he record shows that the decision makers had a good faith reason – honest belief of work rule violations – for terminating [Plaintiff's] employment." Doc. 41 at 6, n.4 (citing *Simmons v. Bd. of Regents of Univ. Sys. of Georgia*, 523 F. App'x 712, 713 (11th Cir. 2013)).

The court concludes that Plaintiff has failed to raise a genuine issue of material fact that Defendant's reason for Plaintiff's termination is pretextual. Although Defendant's ESG does suggest that, prior to taking corrective action, "Managers should investigate the issue and gather statements from everyone involved in the situation," that policy is qualified with two words: "as appropriate."[14] Doc. 34-14 at 16. Thus, Defendant's decision-makers are afforded discretion as to which cases warrant investigations and which do not. Defendant's policy continues with a reservation to Defendant "to take progressive corrective action, up to and including immediate termination, and to skip any intermediate steps in the corrective action process, as appropriate." Doc. 34-14 at 16. Thus, Defendant's decision-makers are afforded discretion to skip written warnings to Plaintiff and proceed directly to termination. While the Eleventh Circuit has indicated that circumstances may

---

[14] The court also notes that the language in Defendant's policy is *should* investigate, not *must*.

exist where an employee can establish pretext by demonstrating an employer's failure to follow a progressive discipline policy, an employer's failure to follow that policy does not show pretext "if management has discretion as to whether to follow the discipline policy." *See Coleman v. Alabama State Univ.,* 904 F. Supp. 2d 1245, 1258-59 (M.D. Ala. 2012) (holding that plaintiff did not establish pretext for failure to follow the progressive discipline policy where there was testimony that the policy was not followed in every case); *Ritchie v. Indus. Steel, Inc.,* 426 F. App'x 867, 873 (11th Cir. 2011) ("[I]f management has discretion as to whether to follow the discipline policy, then a failure to follow the policy does not show pretext."); *see also Mitchell v. USBI Co.,* 186 F.3d 1352, 1355–56 (11th Cir. 1999) ("Standing alone, deviation from a company policy does not demonstrate discriminatory animus.").  Plaintiff has not pointed to evidence that Defendant failed to follow its internal policies for investigations into employee misconduct or for progressive discipline because Defendant's policy allows decision-makers discretion in how they impose discipline and investigate misconduct.  Further, Plaintiff has presented no evidence that Defendant regularly followed a certain pattern of investigation and/or discipline that would run contrary to the way Defendant handled Plaintiff's investigation and/or termination.  As such, Plaintiff has not demonstrated that Defendant's proffered reason for termination is pretextual.[15]

---

[15] The court notes that evidence in the record does indicate that Defendant's review of the matter prior to Plaintiff's termination was hurried, at best.  Duffell stated that her investigation into the matter was simply looking at the purportedly falsified logs.  Duffell Depo. (Doc. 34-8) at 68:98-10.  She did not question anyone else who was present in the dental department during the time Plaintiff was on FMLA leave about the logs.  Doc. 34-8 at 60:11-61:5.  While it may have been wise for Defendant to have engaged in a more complete investigation of the matter prior to terminating Plaintiff, Defendant's policy allows the decision

As part of Plaintiff's argument that Defendant failed to follow its own policies, Plaintiff also suggests that Defendant has shifted its reason for Plaintiff's termination, and as such, the reason is pretextual.  Doc. 34 at 18-19.  While the court agrees that an employer's shifting reasons for termination may be evidence of pretext, the court does not find that such is the case here.  *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1194 (11th Cir. 2004) (finding an employer's inconsistent rationale for termination allowed the jury to question the employer's credibility).  In order to be pretextual, the "new reasons relied on in litigation must plainly contradict the reasons relied on at the time of the decision. . . . The reasons must contradict each other, and not merely be cumulative." *Pate v. Chilton Cnty. Bd. of Educ.*, 853 F. Supp. 1117, 1133-34 (M.D. Ala. 2012).

Here, Plaintiff's termination letter states that Plaintiff "had prefilled out the daily tool count and signed it for August 1-27" and that Plaintiff "had signed the log for the month of June 2014 and July 2014."  Doc. 34-12 at 2.  Further, the letter states that "[t]his constitutes Falsification of an Institution record/document and failure to perform shift to shift counts.  According to the ESG page 19[16] these actions are grounds for immediate termination."  Doc. 34-12 at 2.

---

maker discretion into whether to conduct an investigation at all.  Thus, the court cannot conclude that Defendant's proffered reason for terminating Plaintiff was pretext because Defendant may have conducted an insufficient investigation when Defendant had no obligation, under its policy, to conduct an investigation at all.  Indeed, Defendant's policy allows immediate termination for serious misconduct, examples of which include "[f]alsification of [a] . . . Company . . . record or document" and "[f]ailure to perform shift-to-shift counts."  Doc. 34-14 at 10-11.  Accordingly, Defendant's policy specifically allows immediate termination of Plaintiff for the exact reasons stated by Defendant in the recommendation for termination.

[16] The court notes that it appears this reference to page nineteen in the ESG is erroneous.  The pages of the ESG that list offenses that are grounds for immediate termination are pages 17-18.  *See* Doc. 34-14 at 10-11.

Defendant's argument in litigation is that Plaintiff either: "(1) forged and altered medical charts or (2) did not discharge her duties in preparing and maintaining those charts as she was required to do."[17]   Doc. 29-1 at 15.   The court concludes that Defendant's proffered reasons for termination in litigation do not contradict the reasons stated by Defendant in Plaintiff's termination letter.   Indeed, the reasons match, or at the very least, the latter is an extension of the first.

*(2) Comparators were Treated More Favorably than Plaintiff*

Plaintiff also suggests that Defendant's proffered reason for her termination is pretext because "Defendant treated employees who were not using statutory leave more favorably" than Plaintiff by not investigating or disciplining those employees who were not on FMLA leave regarding the falsified logs.   Doc. 34 at 19.   Plaintiff points to three potential comparators: (1) Paulette Perryman, (2) Dr. Harold Wehby, and (3) Stephanie Caldwell.   Doc. 34 at 19.   Perryman was employed by Defendant as a Licensed Practicing Nurse.   Perryman Aff. (Doc. 29-8) at ¶ 3.   Wehby was employed by Defendant as a Dentist. Wehby Aff. (Doc. 34-13) at ¶ 3.   Caldwell was employed by Defendant as a Dental Hygenist.   Caldwell Aff. (Doc. 29-7) at ¶ 2.   Plaintiff was employed by Defendant as a Dental Assistant.   Battle Depo. (Doc. 29-3) at 20:5-21:6.

---

[17] Plaintiff states that Defendant's proffered reasons for termination are:
  1. Under their handbook for "falsification of an institution record/documents and failure to perform shift to shift counts."
  2. Due to a third party audit from ADOC, which made them aware; and
  3. For "failing to report the fraudulent logs to [Defendant]."
Doc. 34 at 16 (internal references omitted).

When determining whether an individual is similarly situated for purposes of establishing a comparator, the Eleventh Circuit has stated that "the comparator's misconduct must be nearly identical to prevent courts from second guessing employers' reasonable decisions and confusing apples and oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Rioux v. City of Atlanta, Ga*., 520 F.3d 1269, 1281 (11th Cir. 2008). While differences in job ranks may matter when determining if individuals are similarly situated, they "are not, in and of themselves, dispositive as to whether the two individuals may be compared for the purposes of evaluating a discrimination claim." *Rioux,* 520 F.3d at 1281; *Smith v. Lockheed-Martin Corp*., 644 F.3d 1321, 1326 (11th Cir. 2011). "This is because the relevant inquiry is whether the employer subjected differently ranked employees to the same or different employment policies." *Smith*, 644 F.3d at 1321 (citing *Lathem v. Dep't of Children & Youth Servs.,* 172 F.3d 786, 793 (11th Cir. 1999)); *see also Nix v. WLCY Radio/Rahall Commc'ns,* 738 F.2d 1181, 1186 (11th Cir. 1984)). Thus "[i]f the same policies were applied differently to similarly ranked employees, those employees may be compared." *Smith*, 644 F.3d at 1326.

The undisputed facts show that Perryman, Wehby, and Caldwell were not investigated or disciplined with regards to the falsified instrument log. Doc. 29-1 at 3-4, ¶¶ 14-19; Doc. 34 at 4-5, ¶¶ 14-19. The undisputed facts also show that Perryman, Wehby, and Caldwell were not on FMLA leave during the time that Plaintiff was on FMLA leave. Doc. 29-1 at 3, ¶ 13; Doc. 34 at 4, ¶ 13. However, the parties dispute whether the above-named individuals, as employees of Defendant, had a responsibility to record the use of dental instruments on a daily basis, or whether that responsibility fell to Plaintiff alone, as

a Dental Assistant.  Compare Doc. 29-1 at 4, ¶ 1 with Doc. 34 at 6, ¶ 1.  Because the court must construe the facts in the light most favorable to Plaintiff, the court will consider that Defendant's Dentistry Department, as a whole, had the responsibility of maintaining the instrument logs.

Even so, the suggested comparators are not similarly situated to Plaintiff because of one simple reason: none of the comparators' initials were found on the bottom of the falsified logs.[18]  Therefore, based on that key distinction, their conduct was not "nearly identical," as required to be a comparator.  Defendant could have assumed that Plaintiff was guilty of falsifying the documents and that the suggested comparators were not.  That could have led to Defendant treating Plaintiff differently than her suggested comparators.  Indeed, Defendant's belief that Plaintiff was responsible for the falsified logs due to Plaintiff's initials appearing on the logs is reflected in Defendant's Recommendation for Termination.  There, Defendant states: "Upon review, it was noted that you had prefilled out the daily tool count and signed it for August 1-27.  *It was also noted that you had signed the log for the month of June 2014 and July 2014.*  You were on FMLA from May 21, 2014 until August 4, 2014."  Rec. for Term. (Doc. 34-12) at 2 (emphasis added).  That conduct could not have been imputed to the suggested comparators because their signatures (or initials) do not appear anywhere on the logs in question.  Further, Duffell, who terminated Plaintiff, testified that no one else was investigated because only Plaintiff's signature

---

[18] The court assumes, *arguendo*, that Plaintiff's suggested comparators are not disqualified as similarly situated because of their job titles/ranks alone.

appeared on the instrument logs.  Duffell Depo. (Doc. 34-8) at 60:11-61:5.  Thus, the suggested comparators are not similarly situated because they did not engage in the same alleged misconduct.[19]  *See Maniccia,* 171 F.3d at 1368 (noting that whether employees are similarly situated depends upon "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways" and that to be similarly situated, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions").  Because Plaintiff cannot point to a similarly situated employee whom Defendant treated more favorably, Plaintiff has not raised a genuine issue of material fact with regards to whether Defendant's proffered reason for Plaintiff's termination was pretextual.

### (3) Plaintiff did not Falsify Logs or Fail to Report Discrepancies

Finally, Plaintiff alleges pretext on the basis that she, in fact, did not falsify the records, nor did she fail to inform Defendant that the logs were falsified.  Doc. 34 at 20-22.  As evidence that she did not falsify the records, Plaintiff points to the affidavit of Dr. Wehby, which contains an admission that he copied the logs at the direction of Cindy Johnson.  Wehby Aff. (Doc. 34-13) at 1-2.  Plaintiff also points to evidence that Defendant was aware of the audit from the ADOC prior to August 5, 2014.  Wehby Aff. (Doc. 34-13) at 2, ¶ 9.

---

[19] The court notes that the suggested comparators could have engaged in the same misconduct of failing to discover and report that the logs had been falsified.  However, Defendant could have reasonably assumed – albeit potentially incorrectly – that Plaintiff was the only employee who engaged in falsifying the records. Because the conduct must be nearly identical, the court cannot conclude that the suggested comparator's were similarly situated, regardless of whether they were subjected to the same work rules.

The undisputed facts show that Defendant's personnel terminated Plaintiff for allegedly falsifying the Daily Dental Instrument Count after a recommendation for termination from Duffell.  Doc. 29-1 at 4, ¶ 20; Doc. 34 at 5, ¶ 20.   Accepting Plaintiff's evidence as true, Wehby and Johnson would have been the only individuals who knew that Plaintiff was not guilty of falsifying the logs.  Plaintiff has failed to point to evidence that Duffell knew that someone other than Plaintiff falsified or copied the logs, and that Duffell failed to discipline that/those individual(s) as a result.  *See Jones v. Gerwens*, 874 F.2d 1534, 1541-42 (11th Cir. 1989) (determining that the employee failed to make a showing of a genuine issue of material fact sufficient to establish disparate disciplinary treatment because the employee failed to show that the decision-makers had knowledge that previous known violations were "consciously overlooked").  Plaintiff has not pointed to evidence that Johnson's or Wehby's knowledge that Plaintiff did not falsify the logs could be imputed to Duffell.  Thus, accepting as true that Plaintiff did not falsify the logs nor did she fail to report the falsified logs, Plaintiff has not shown that the decision-maker had knowledge that the reason for Plaintiff's termination was untrue at the time the decision was made.  While hindsight into the matter is 20-20, Plaintiff has not shown that Defendant's proffered reason for termination is untrue and that FMLA retaliation was the real reason for her termination.  As such, Plaintiff has failed to create a genuine issue of material fact that Defendant's reason for terminating Plaintiff was pretextual.

In short, Plaintiff has failed to "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for [Plaintiff's termination] that a reasonable factfinder could find them unworthy

of credence." *See Combs v. Plantation Planters*, 106 F.3d 1519, 1538 (11th Cir. 1997). Thus, Defendant's motion for summary judgment is due to be granted.

## IV.    CONCLUSION

For the above stated reasons, it is

ORDERED that the Motion for Summary Judgment (Doc. 29) is GRANTED and this case is DISMISSED.

A separate judgment will issue.

Done this 30th day of June, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE